## THE PHILA. AND READING RAILROAD CO. *v.* LONG.

1. In an action against a railroad company for killing a child two years and two months old, the question as to the position of the child, whether the engineer could see it, and the rate of speed of the train, were properly left to the jury.

2. The court below charged that the fact that the child was found in the street affords strong presumption of negligence; but the jury were to consider whether the mother took reasonable care of the child; if she did not, it was negligence. *Held*, correct.

**Error to the District Court of Philadelphia.**

Opinion delivered February 24, 1874, by

AGNEW, C. J. This case has been argued by the eminent counsel of the railroad company as if the facts were fixed with the certainty of a special verdict. If we assume that the child, Rosanna Long, suddenly appeared upon the track, five or six feet ahead of the locomotive on the left-hand side; that the engineer was in his proper place on the right side of the engine cab, looking out constantly, but his vision, for several feet in front of the cow-catcher, was obstructed by the boiler and carriage of the engine; and that the fireman was at his post ringing the bell, and unable to keep a look-out on the left-hand side of the engine; we might conclude that the death of the child was an accident not within the power of the engineer to avoid, and that the court might have given a binding instruction to the jury. Then, indeed, the rate of speed would be immaterial, for, upon such a sudden appearance of the child on the track, no rate of speed, no matter how slow, could have saved it. But it was because these facts were not so fixed and certain, that the question of negligence must necessarily go to the jury, to ascertain exactly how they were; and for the same reason the rate of speed became an element properly belonging to the case. Only two witnesses saw the accident happen. One of them, S. A. Moore, coming out of an alley into Cotton street, which crosses Cresson street and the railroad track at right angles, saw the child and the locomotive at the same instant, at the crossing. To him the sight

and the accident were simultaneous, so that his testimony gives us no information of the previous position of the child while the train was moving up Cresson from Gay street to Cotton. The other witness, Benj. Levering, saw more. He crossed Cresson at Cotton street; saw the engine coming. Saw it when it left the depot at Gay street. The child was then on the upper side of the road; after crossing, he himself turned up Cresson street, and in doing this turned his back upon the child; for he says, just as I turned round, the child went on the track, and the cowcatcher struck her, the train then going over eight miles an hour. In his cross-examination he says, when he got opposite to the store at the upper corner of Cotton street, the child was then on the side of Mr. Long's house, and when he got over, the child was between the tracks. Thus it is very evident the testimony of this, the only witness who saw the child before the train reached Cotton street, left it an open question of fact where the child was, and whether she was not visible to the engineer had he kept a constant look-out while the train was moving up Cresson street, before it reached Cotton street, and whether a slower rate of speed would not have enabled the engineer to discover the child, as well as to reverse his engine before it came upon her. Two of the witnesses testify the speed to have been not less than eight miles an hour, and Levering gives as a reason for his belief, that he had lived there all his lifetime, and of course was in the habit of judging of the speed. Thus it is evident that the position of the child while the train was moving up Cresson street, the lookout of the engineer, the place of the fireman, the rate of speed, and all the circumstances, were matters entering into the question of negligence, taken into connection, also, with the all-important fact that Manayunk is a closely built, populous town, Cresson street a public thoroughfare, not of great width, where many persons of all ages, sexes, and condition are constantly passing and repasssng, and crossing the tracks of the railroad rightfully. It was, therefore, clearly the province of the jury to ascertain from the evidence the true position of the child while the train was moving up Cresson street, when and how far the engineer ought to have seen the child in advance of the locomotive, and whether he was keeping a due look-out, and a properly regulated rate of speed, in traversing a populous street. It was in view of this duty of the jury, the instructions of the judge, contained in the first three assignments of error, were apposite and correct. We disagree emphatically to the position taken by the learned counsel of the railroad company that the rate of speed at the time was not material, and that seven or eight miles an hour is a rate of speed compatible with safety in passing through the streets of a populous town. While it is true that trains must be run at a high rate of speed to reach their greatest utility, populous towns and cities must be exceptions, when the speed must be moderated in view of the danger to life, limb, and property. Where the people and the trains have a common right to be, and to have a joint use

of the highway, the rights of each must be regarded. These remarks dispose of the first three assignments of error.

There can be no just complaint against that part of the charge recited in the fourth assignment. It does not contradict the answer to the defendant's fourth point. The learned judge affirmed all his points, including the fourth, stating that it is negligence and would prevent a recovery for parents to suffer an infant less than two years and two months old to wander upon a railroad track when trains are constantly passing. In that part of the charge recited in the fourth assignment, the judge said, "that the fact that the child is found in the street affords a strong presumption of negligence on the part of the plaintiffs. You will, therefore, consider whether the mother took *reasonable care* of the child ; if she did not, it was negligence." To *suffer* a child to wander on the street has the sense of *permit*. If such permission or sufferance exist, it is negligence. This is the assertion of a principle. But whether the mother did suffer the child to wander is a matter of fact, and is the subject of evidence, and this must depend upon the care she took of her child. Such care must be *reasonable* care dependent on the circumstances. This is a fact for the jury. If she did not exercise this care she was negligent. What more than this can be demanded of her? When a railroad runs through a populous city has the company a right to exact a harder measure, and are we to say, as a matter of law, that the citizens are to be imprisoned in their houses, or their children caged like birds, otherwise it is negligence? Is it negligence for the poor who congregate these crowded streets, unless, even in the summer's heat, they live shut up in the noisome vapors of their closed tenements, without a breath of healthy air? Is this the life they must lead or be adjudged to be negligent? This mother gave her child a piece of bread, to satisfy it, closed the kitchen door to keep it in, and went to the next room to scrub the oil cloth on the floor, and before her labor was finished and in less than five minutes, the mangled body of her little one was brought in and laid before her. We have no reason to believe that her love for her child was less than that of the more favored of her sex, having servants at their beck.. Because the child managed to lift the latch and momentarily disappeared, are we to say this was negligence *per se*, and that she *suffered* her child to wander into the street? What sort of justice is that which tells the mother agonizing over her dying child, *your* negligence caused this. *You* suffered your child to run into the jaws of death. We cannot perceive any fault in the railroad company. A speed of eight miles an hour along this populous thoroughfare was all right. We can endorse no such cruel doctrine ; but we must say, as was said in Kay *v.* Railroad Company, the doctrine which imputes negligence to a parent in such a case is repulsive to our natural instincts, and repugnant to the condition of that class of persons who have to maintain life by daily toil.    15 P. F. Smith 276. The judgment is affirmed.